UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| KEVIN MICHAEL BELL<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LACEY; Police Chief DUSTY PIERPOINT individually; Police Commander JOE UPTON individually; City Attorney DAVID SCHNEIDER individually; Mayor ANDY RYDER individually; City Manager SCOTT SPENCE individually; DOEs 1-25 individually, NISQUALLY TRIBE, Nisqually CEO JOHN SIMMONS, individually and Nisqually CFO ELETTA TIAM individually.<br><br>Defendants. | NO. 3:18-cv-05918-RBL<br><br>PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO TRO (sua sponte converted to Motion for Preliminary Injunction).<br><br>Hearing set for: March 7, 2019 |

REPLY

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
www.MillikanLawFirm.com

Page **1** of **9**

## I. INTRODUCTION

LCR 65(a)(5) prohibits a party seeking a TRO from filing a Reply Brief. The Court converted Plaintiff's TRO motion to a motion for preliminary injunction. LCR 7(b)(3) permits a party moving for preliminary injunction to file a Reply Brief and LCR 7(d) sets the deadline at "no later than the noting date." At risk that the March 7, 2019 hearing is not the constructive noting date of the converted motion, Plaintiff offers this reply.

## II. ARGUMENTS IN REPLY

Plaintiff conceded in the motion that the defendants have innovated an unconstitutional system so unique as to elude any factually pertinent case law. Dkt. # 20, pg. 6. The defendants consider this paucity of "federal or Washington State cases directly addressing the constitutionality" of the tribal jail Agreement as a feather in their cap. Dkt. # 23, pp. 3-4; Dkt. # 25, pg. 6. They propose that their strained reading of the several state laws has preemptive effect on Plaintiff's Constitutional rights, and that because "several municipalities" similarly mistreat their citizens, the Court should deny relief. Dkt. # 23, pg. 4.

**1. Lacey argues that Plaintiff's 19 days in tribal jail was not tribal jurisdiction.**

Lacey concedes that "Plaintiff was not seized pursuant to Nisqually authority." Dkt. # 23, pg. 5. This leaves two possibilities justifying the seizure. First, the entire Nisqually Jail was perhaps staffed with 'General Authority Washington Peace Officers' deputized as such by the procedures set forth in RCW 10.92.020. Taking as true Lacey's assertion that Plaintiff was "detained pursuant to the laws of the State of Washington," then technically a deputized General Authority officer could lawfully seize Plaintiff. Dkt. # 23, pg. 5.

REPLY

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **2** of **9**

However, this authority cannot escape the Constitutional limitation that such seizure last only "the amount of time it takes to determine that the violator is not an Indian…[or]…the officer may detain the non-Indian for a reasonable time in order to turn him or her over to state or federal authorities…." Bressi v. Ford, 575 F.3d 891, 896 (9th Cir. 2009).  Nor does the statute purport to extend this authority to snatching non-tribal citizens into tribal jails.  See e.g. RCW 10.92.020(1) ("has the same powers as any other general authority Washington peace officer to enforce state laws in Washington, including…arrests.).

Finally, records obtained from the Department of Enterprise Services indicate that only six Nisqually officers were deputized with general authority during the dates in question.  Decl. Pl.'s Att'y, Ex. A.  Even if captivity within the jail could be justified under Constitutional and statutory law, it is highly unlikely that the jail is completely staffed with only these six officers.

Lacey's second theory is that its jurisdiction extends inside the Nisqually territorial jurisdiction and the Nisqually Jail, for purposes of detention and incarceration of non-tribal citizens. Dkt. # 23, pg. 5.  Further, Lacey states "there is no evidence that the Nisqually Tribe is asserting jurisdiction over the plaintiff." Id.  This construction ignores the legal significance of concrete walls, concertina wire fences, guards with guns, and other such accoutrement.

Black's Law defines jurisdiction as "A government's general power to exercise authority over all persons and things within its territory…." Black's Law Dictionary for iPhone (10th ed. 2009, Version 1.4).  Defendants have introduced no evidence that Nisqually has waived this authority as to non-natives housed in Nisqually Jail.  To the contrary, the Agreement equates non-natives with "other prisoners housed in Nisqually Jail." Dkt. # 9, pg. 23.

REPLY

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **3** of **9**

If non-native captives of Nisqually Jail are indeed under state jurisdiction, then the Public Records Act, RCW 42.56 should apply to records held within the Nisqually Jail. However, Nisqually has neither published "in the Washington Administrative Code" nor "prominently display[ed]…methods whereby the public may obtain" records as required by RCW 42.56.040. Moreover, requests to Lacey yield nothing more than the words of Nisqually officials -no enforcement or appeal mechanism applies. See e.g. Decl. Pl.'s Att'y, Ex. B. FOIA has been similarly useless. Id.

To make matters worse, Nisqually is asserting sovereign immunity. It is difficult to imagine how captivity in the territorial jurisdiction of a tribe, plus secrecy and immunity could add up to anything less than jurisdiction over Plaintiff. Plaintiff's ability to assert his Constitutional rights is hampered in much the same way as a 'CIA black site' torture victim who cannot overcome the "state secrets doctrine," which is said to strike a balance "between fundamental principles of our liberty, including justice, transparency, accountability and national security." Mohamed v. Jeppesen Dataplan, Inc., 614 F.3d 1070, 1073 (9th Cir. 2010). Yet Plaintiff is merely an accused shoplifter tossed into an Indian jail, unable to exercise his rights, despite having no national security implications.

In any case, Indian captivity far exceeds the sort of "extreme changes in…conditions of confinement" held offensive to due process in Olim v. Wakinekona, 461 U.S. 238, 245 (1983); discussed at Dkt. #20, pp. 11-12 (comparing mental hospital to sovereign jail). It is against this legal and factual backdrop of foreign distinctiveness that Plaintiff moves the Court for relief.

Factually, anyone who has driven (or been driven in a squad car) from Washington State Proper into the land of a tribal sovereign can attest to an experience of manifest change; of both

REPLY

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **4** of **9**

physical and visceral transportation to a different cultural environment.  Words and fonts on street signs are unique, as are official insignia and uniforms; people and buildings have unique physical characteristics; shops sell certain products at a discount derived from sales tax exemptions; certain types of casinos not permitted elsewhere usually loom over the main road; and animosity may be felt by those foreigners perceived as descendants of settlers whose ancestors committed atrocities against natives.  The list of factual foreignness could fill pages ad nauseam.

The list of legal foreignness is also long.  See e.g. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 52-57 (1978) (ICRA confers no private right of enforcement action akin to 42 U.S.C. § 1983; the Bill of Rights does not limit tribal authority, nor does the 14th Amendment); United States v. Lara, 541 U.S. 193 (2004) (holding tribes and federal government are "sperate sovereigns" for double jeopardy purposes, which makes three sovereigns when Washington State is added to the mix); Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 335-37 ("nonmembers have no …say in the laws…that govern tribal territory…[so they] may be imposed on nonmembers only [by] consent…."; tribes have absolute "power to exclude persons from tribal land;"); United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380 (8th Cir. 1987) (while the federal government may be able to access tribal records, there is no version of a public records act by which non-tribal captives can acquire records of their time in tribal captivity); Wilson v. Horton's Towing, 906 F.3d 773, 780 (9th Cir. 2018) (civil forfeiture of non-Indian's vehicle upheld under tribal law as civil; such forfeiture laws may not be lawful in the U.S. Proper after Timbs v. Indiana, No. 17-1091 (U.S. S.Ct. February 20, 2019)).

Although Plaintiff cannot point to a specific case that negates municipal authority to remand him into Indian custody, it is abundantly clear that Lacy cannot assert any such positive authority.

REPLY

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Lacey relies on the conclusory opinion of its deputy prosecutor that court rules, "the Washington State Constitution and federal laws" -without specifying *any* particular clause, section, or case- "provide [Plaintiff]…the same procedural due process protections as…[if] housed at a non-tribal facility." Dkt. # 24, pg. 2.

Although the pretrial detainee standard of proof under deliberate indifference has been relaxed by the breadth of Kingsley v. Hendrickson, it is clear that Plaintiff's treatment amounts to the superlative standard of pretrial punishment. 135 S.Ct. 2466, 2473-74 (2015) (applying objective indifference to pretrial excessive force claims).

> For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." …Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

Bell v. Wolfish, 441 U.S. 520, 535-37 (1979) (citing Ingraham v. Wright, 430 U.S. 651, 671-672 n. 40, 674 (1977); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165-167, 186 (1963); Wong Wing v. United States, 163 U.S. 228, 237 (1896) and quoting Gerstein v. Pugh, supra, at 114; see Virginia v. Paul, 148 U.S. 107, 119 (1893).

In defining what is and is not punishment, the Bell Court looked to "automatic forfeiture-of-citizenship provisions of the immigration laws…." 441 U.S. at 537-38 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)). Premonitory of the case at bar, the Court stated "forfeiture of citizenship traditionally had been considered punishment." Id. at 538. When the City

REPLY

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **6** of **9**

forcibly removed Plaintiff to sovereign soil, it effectuated something akin to citizenship forfeiture -certainly a demotion from the citizenship contemplated in and protected by the Bill of Rights.

The <u>Bell</u> Court also weighed punitive intent apparent in the "legislative history of the forfeiture provisions." <u>Id</u>. Paragraph 1 of the Nisqually Jail Service Agreement similarly lumps "any person arrested, sentenced by the court or held under authority of any law or ordinance of the City" together under the term, "prisoner." Dkt. # 9, pg. 23. Moreover, "[t]hat deportation is a penalty -- at times a most serious one -- cannot be doubted." <u>Bridges v. Wixon</u>, 326 U.S. 135, 154 (1945). Nor can be doubted the facial, black and white, equation of prisoners and detainees in the Agreement.

If Nisqually equating pretrial detainees to prisoners is not sufficiently probative of intent to punish, deportation of Plaintiff into a sovereign nation is impermissibly excessive to effectuate the legitimate purposes inherent in pretrial detention. In other words, depriving an accused American of residency within his own nation is not an acceptable means of achieving the "legitimate nonpunitive governmental objectives" of ensuring his participation in the criminal process. <u>Bell</u>, 441 U.S. at 539, n. 20 (citing <u>Kennedy</u>, 372 U.S. at 168).

Plaintiff's deportation into Nisqually is on the order of the <u>Bell</u> Court's hypothetical:

> loading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so many alternative and less harsh methods, would not support a conclusion that the purpose for which they were imposed was to punish.

<u>Id</u>. Chains and dungeons are clearly a hyperbolic device the Court intended to reach the most extreme contours of imaginable pretrial detention. The idea that a city would remove American citizens to Indian custody in the name of financial thrift would have been an even more

REPLY

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **7** of **9**

shocking hypothesis, were it not already an unfortunate truth.  The defendants should not be heard to argue that their innovative method of depriving civil rights is merely a formal distinction without a substantive difference.  Anyone who happens to enter one of these sovereign nations can readily discern a stark atmospheric difference from the outside.

**2.  Defendants argue "everybody's doing it."**

"A policy is no less unconstitutional merely because everyone does it." Pena v. Board of Educ. of City of Atlanta, 620 F.Supp. 293, (1985) (Atlanta, much like Lacey, sought to preempt federal laws because other "localities [were] also violating the equal protection clause" by so doing.).  Lacey invokes some unspecified constitutional and "federal law" authority for the Agreement but can only resort to arguing that it is justified by the bad acts of other local governments and agencies.  Dkt. # 24, pg. 2.  Plaintiff has not invoked the Court's jurisdiction over "Dupont, Enumclaw, Lakewood, Orting, Roy, Tacoma, Tumwater…[,] Steilacoom, …, or Department of Corrections…." Id.

Finally Lacey cites State v. Dalseg in support of its contention that a lack of negative case law, coupled with the existence of a peer group of other government entities also violating citizens' rights, somehow justifies the Agreement.  132 Wn.App. 854 (2006); Dkt. # 23, pg. 4.  It is true that Dalseg involved another local government, Mason County, sending non-native citizen to Nisqually. Id. at 857-859.  Unlike Plaintiff, however, Dalseg was given the choice whether to serve his time in state prison or in a work release program. Id. at 858.  "Mason County has no work release facility, and the Thurston County Jail had no space open at the time. Thurston County referred Dalseg and Cestnik to the Nisqually Tribal Jail work release program." Id.  Dalseg does not

REPLY

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **8** of **9**

adjudicate the constitutionality of serving time in Nisqually.  Nor did the Dalseg court need to reach the issue, given the *voluntary* choice to serve in Nisqually work release.  Id. at 859.

### III. CONCLUSION

The Court should order a preliminary injunction prohibiting Lacey from detaining or sentencing Plaintiff into Indian custody.  The injunction should also prohibit the Nisqually tribal officials who operate Nisqually Jail from detaining plaintiff.

.

Respectfully Submitted,

By s/Jackson Millikan
Jackson Millikan, WSB# 47786
2540 Kaiser Rd NW
Olympia, WA 98502
360.866.3556
Jackson@MillikanLawFirm.com

DECLARATION OF SERVICE

On this 26th day of February, 2019, I, Jackson Millikan, attorney in good standing and counsel for Mr. Bell, declare under penalty of perjury in accordance with 28 U.S.C. § 1746 that I served this document and associated declaration on all counsel of record through CM/ECF.

By, s/Jackson Millikan
Jackson Millikan, Esq.

REPLY

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **9** of **9**