HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KEVIN MICHAEL BELL,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF LACEY, et al.,<br><br>        Defendants. | CASE NO. C18-5918RBL<br><br>ORDER<br><br>[Dkt. #s 70 ,85, 103, 112, 117, and 120] |

THIS MATTER is before the Court on the following motions: Plaintiff Bell's Motion for Partial Summary Judgment (on his claim that the Lacey-Nisqually Jail Services Agreement is unconstitutional and that incarcerating him there violated his Fourth Amendment Rights even absent his medical needs) [Dkt. # 70]; the individual Lacey Defendants' Motion for Summary Judgment on qualified immunity, lack of participation, and lack of duty [Dkt. # 85]; Bell's Motion to Amend his Complaint, to identify the Doe defendants and to add Lacey's Insurer (the Washington Cities Insurance Authority, a self-insurance pool) as a defendant [Dkt. # 103]; Lacey's responsive Motion for Rule 11 Sanctions, arguing that the effort to add WCIA is baseless considering the long-expired limitations period [Dkt. # 112]; Bell's Motion to Compel the Tribe's compliance with his subpoena duces tecum [Dkt. # 117]; and Bell's Second Motion

for Summary Judgment, claiming that Lacey violated his right of access to the courts by detaining him in a sovereign jail, as a matter of law.

The facts have been described in prior Orders [Dkt. #s 46, 58 and 71]. The Court previously dismissed Bell's claims against the Tribe based on sovereign immunity and denied the City's Motion responsive to dismiss for failure to join an indispensable party.

## DISCUSSION.

**A. Bell's first Motion for Summary Judgment.**

Bell's complaint has two primary components: First, he alleges that the Lacey-Nisqually Jail Services Agreement is illegal and unconstitutional. Thus, he claims, the act of incarcerating him at the Nisqually Jail following his shoplifting arrest violated his Fourth Amendment right against unreasonable seizure. Bell's first motion seeks summary judgment on only this claim. Bell's second, more traditional § 1983 claim is based on his allegation that his jailors were deliberately indifferent to his medical needs, resulting in a stroke. Bell does not seek summary judgment on this claim, but the Individual Lacey Defendants do. Their motion is discussed below.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

Bell argues that it is unconstitutional as a matter of law for a non-Indian arrestee to be detained in Indian Country. He claims first that the JSA is effectively a Treaty between Lacey and the Tribe, and he cites ample authority for the proposition that even a *state* is not constitutionally permitted to enter treaties with other nations. He also relies on numerous authorities regarding a Tribe's authority to detain or incarcerate a non-Indian who has not committed a crime in Indian Country. He claims the JSA permitted Nisqually to effectively kidnap[1] him for profit. Finally, Bell relies on a persuasive letter authored by former Washington State Attorney General Robert McKenna, opining that the City of Yelm's similar JSA with Nisqually was not authorized by either the City and County Jails Act (Chapter 70.48 RCW) or the Interlocal Cooperation Act (Chapter 39.34 RCW). McKenna did not opine that the act of

---

[1] Bell also claims he was deported, banished, exiled or extradited to Indian Country. He did not, however, leave the United States; he did not even leave Washington. He was detained by Lacey.

incarcerating a non-Indian at the NDCC was itself a violation of the prisoner's Fourth Amendment or Due process constitutional rights.

The problem with Bell's first argument is that while treaties are effectively contracts, not all contracts involving a Tribe are treaties. The JSA is not a treaty. The problem with the second argument is that Bell was not arrested, detained, or prosecuted by the Tribe; he was arrested in Lacey, by Lacey, and incarcerated by Lacey. Lacey, not the Tribe, decided whether to prosecute him. And while McKenna's letter makes some good points, it does not address the issues in this case, and it is not binding. It is persuasive, but it is not legal *authority*, at all; it is an argument authored by a private citizen, akin to an amicus brief, filed in a different case.

Lacey's response addresses these points, but it also relies on cases and authorities acknowledging the constitutional permissibility of interstate prisoner transfers and of private prisons. Citing *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 174, 75 L.Ed.2d 813 (1983), *Richardson v. McKnight,* 521 U.S. 399, 405, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), and *White v. Lambert,* 370 F.3d 1002, 1013 (9th Cir. 2004), among others. It argues that a sovereign tribe is basically a like a sovereign state; it is not unconstitutional to send a person convicted in Washington to an Oregon correctional facility. Or to a private prison in Arizona; the guards there are state actors and a prisoner can assert a § 1983 claim against those who violate his constitutional rights. A guard or a care provider at a tribal prison is similarly liable for his constitutional violations, notwithstanding his tribal status or his tribe's sovereign immunity. *See Lewis v Clark*, 137 S.Ct. 1285 (2017) (individual tribal members not entitled to sovereign immunity where they are the real party in interest).

There is a significant difference, though, between a jail in another state and one run by a tribe, as Nisqually's successful motion to dismiss on sovereign immunity grounds aptly

demonstrates. Lacey repeatedly emphasizes that it had a "policy" to provide medical care to detainees at the NDCC. But what if the policy was instead *not* to provide medical care, or even food, to prisoners, perhaps to save money? If Lacey had an unconstitutional policy or practice in running its own jail, it would be subject to *Monell* liability to the extent its policy was the moving force behind a constitutional injury. Bell claims that Nisqually violated his rights through similar, if less obvious, policies. But because Lacey sent Bell to NDCC, he has no *Monell* recourse against the Tribe.

Indeed, once the Court accepted that the Tribe was simply beyond Bell's reach—even if it did violate his constitutional rights—Lacey (and the individual Lacey defendants) promptly claimed that Nisqually was an indispensable party and sought dismissal of Bell's claims against them. As the Court explained in rejecting that effort, taken to their logical extreme these positions create a perverse incentive for governmental entities to send their pre-trial detainees to a tribal facility, where their rights can be ignored with impunity: the prisoner can't sue the jailor who refused to provide medical care and he can't sue the city that sent him there if the Tribe is not a party. The Tribe's and Lacey's arguments for such technical exoneration would apply even if the facts were egregious and undisputed.

Neither Nisqually's nor Lacey's by-the-book motions practice on these issues has yet to satisfactorily describe how this system can work in a way that makes constitutional and practical sense. Their combined claim that Bell had no recourse even if he was denied his constitutional rights at NDCC was and is troubling. For all of Bell's hyperbole, if it were indeed the case that an NDCC detainee has no legal recourse for constitutional injuries, then there would be something constitutionally wrong with the JSA. There are other troublesome ramifications raised by other motions, discussed below.

1    The Court has endeavored to view the scheme in a way that does make sense. Lacey
2    cannot avoid its obligations to its detainees by sending them to NDCC anymore than it could do
3    so by sending them to Afghanistan. Lacey (not the Tribe) arrested and detained Bell and
4    determined when and how he would be released. It decided whether to prosecute him. Its
5    claimed "policy" of providing medical care is a prudent one: it has a constitutional obligation to
6    do so, and it can't escape liability to its detainees if the Tribe didn't share or follow that policy.
7    In any event, whether Lacey executed its duty to Bell is not the subject of this motion.

8    Bell's Motion for Summary Judgment on the JSA's inherent unconstitutionality is
9    **DENIED**.

10   **B.  Bell's second Motion for Summary Judgment.**

11   Bell seeks Partial Summary Judgment on his "denial of access to the courts" claim. As
12   the Lacey Defendants point out, this motion and this claim are closely related to the motion and
13   claim addressed above. Bell claims that Lacey violated his constitutional right to access to the
14   courts[2] by sending him to a jail run by a sovereign nation immune from his § 1983 claims, as a
15   matter of law. He could have asserted these claims against his jailors if they were Lacey
16   employees and not in Indian Country. He argues—on this point, persuasively—that he cannot
17   even force the Tribe to give him the records of his incarceration, impeding the pursuit of his
18   claims against the other defendants. Lacey's response is a sort of tautology: Bell is litigating his
19   § 1983 claims against them, right here and now, which proves it did not prevent him from doing
20   so.

---

[2] Bell argues that this right is protected by Article IV's privileges and immunities clause, the First Amendment's protection of the right to petition the government, the Fifth and Fourteenth Amendments' Due Process requirements, and by the Fourteenth Amendment's Equal Protection right.

1    The Court addressed the problem above. Tribal sovereign immunity, like any sovereign
2    immunity, obviously impairs a would-be claimant's right to sue the immune entity. Sovereign
3    immunity itself denies access to the courts. Bell's claim that he cannot sue Nisqually because of
4    the agreement is not correct; he cannot sue the Tribe because of sovereign immunity, but he can
5    sue and has sued the entity that sent him to NDCC, and the individuals that he claims
6    participated in the constitutional torts he suffered. If it were the case that Bell had no recourse
7    against the Tribe *or* Lacey—if their combined sovereign-immunity-and-indispensable-party
8    defense was effective, even though they had policies that were the moving force behind a
9    constitutional violation—that would raise serious concerns about the wisdom and legality of
10   agreements like the JSA. But that is not the case. The Lacey defendants did not deny Bell access
11   to the courts, against either them or the Tribe. They certainly did not do so as a matter of law.

12   Bell's Motion for Summary Judgment on his Denial of Access claim is **DENIED**.

**C.  Bell's Motion to Amend.**

14   Bell seeks to amend his complaint to identify two already-named "DOE" defendants
15   (Connolly and Stevenson), and to add as a defendant the Washington Cities Insurance Authority
16   (WCIA). Bell alleges that the WCIA is a part of the conspiracy between Lacey and the Tribe and
17   that it underwrote the JSA (and indeed participated in its drafting), knowing that it was illegal.

18   Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when
19   justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010)
20   (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme
21   liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)
22   (citations omitted). In determining whether to grant leave under Rule 15, courts consider five
23   factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and
24   whether the plaintiff has previously amended the complaint." *United States v. Corinthian*

*Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital,* 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

Bell's effort to amend his complaint to identify the DOE defendants is not opposed and is GRANTED. The Lacey Defendants, though, strenuously oppose Bell's effort to add WCIA at this late date. Bell's incarceration at NDCC ended in August 2016, and as he concedes, the limitations period on his § 1983 claims arising from that event expired in August 2019. The Lacey Defendants argue that amendment would be futile[3] because Bell's claims against WCIA are time-barred as a matter of law. They also argue that Bell's claims are without legal or factual support; it is well-settled in Washington that third party claimants like Bell have no right of action against their alleged tortfeasor's insurer. Citing *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986). They argue that insuring Lacey and reviewing its contracts does not make it a co-conspirator in an unconstitutional scheme to send non-Indians to an Indian jail, as a matter of law.

An amendment to a pleading relates back to the date of the original pleading when it changes the party or the name of a party against whom the claim is asserted only when (1) the party received notice of the action such that it will not be prejudiced in defending on the merits,

---

[3] The Lacey Defendants have also moved for Rule 11 sanctions against Bell, based on the same arguments. That motion is discussed below.

and (2) that party knew or should have known that the action would have been timely brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C).

Bell argues his claim against WCIA "relates back" under Rule 15 because it was involved in the conspiracy from the beginning and knew that it had "underwritten" an illegal JSA. He argues that WCIA took active control of the JSA and makes other claims and arguments about WCIA's level of complicity and fault. He claims that he didn't learn about WCIA's culpability until recently. But he does not claim or demonstrate that WCIA knew that, but for a mistake on Bell's part, it would have been timely named and served. This is what Rule 15(c)(1)(C) requires. Bell's claims against WCIA do not relate back to the date of his original filing, and they are facially time-barred. Amending the complaint to add claims against WCIA would be futile. For this reason alone, the Motion to Amend to add Lacey's insurer as a defendant is DENIED.

The Court will note that the viability of a conspiracy claim against Lacey's insurer is doubtful. Bell's factual and legal description of WCIA's involvement is not enough to overcome the well-settled proposition that a plaintiff cannot sue his tortfeasor's insurance company directly (absent an assignment of rights). *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986).

Bell's Motion to Amend his complaint to name defendants Connolly and Stevenson is **GRANTED**. His motion to add WCIA as a defendant is **DENIED**.

**D. Lacey's Motion for Sanctions.**

Lacey argues that Bell's attempt to add WCIA is a Rule 11 violation because there is no factual or legal authority for the claim. Bell did not prevail on the motion, but the Court is not persuaded that the claim is frivolous or that Bell was not in good faith arguing for an extension of the current state of the law. The Motion for Sanctions is **DENIED**.

**E. Bell's Motion to Compel.**

Bell asks the Court to compel Nisqually to produce documents in response to his subpoena duces tecum. He argues that whatever other defenses it may have, the Tribe already produced some of the documents, and that voluntarily production of some is a waiver of the right to withhold others in the name of sovereign immunity. Citing *United States v. James*, 980 F.2d 1314 (9th Cir. 1992). The Tribe argues that it expressly did *not* waive its sovereign immunity when it made its initial disclosures, and maintains that because it enjoys sovereign immunity, its former detainees have no legal mechanism for obtaining any records from it, without exception.

There are certainly cases in other contexts that suggest that sovereign immunity applies to discovery. But the implications of that being the easy final answer are, again, troubling. The Tribe is effectively arguing that NDCC could implement a formal policy of not providing medical care to its detainees, and not only is the Tribe immune from suit, it does not have to produce that policy or a deceased prisoner's medical records. Even in an area that is complicated and not always fair, this is nonsensical.

The short answer is that Nisqually waived its sovereign immunity from discovery on the records it produced, and on related records. *United States v. James*, 980 F.2d 1314 (9th Cir. 1992). One suspected of a crime cannot say, "I am not waiving my right to silence but here's what happened," without in fact waiving her Fifth Amendment rights. Voluntary production of some documents is a waiver of immunity as to related documents.

The longer answer is that even if Nisqually did not waive its immunity, Lacey has a contractual right to at least Bell's own NDCC records—far more than "marginally relevant," these records will likely decide who wins—and an obligation to obtain and produce them in connection with a lawsuit alleging a violation of a Lacey detainee's constitutional rights at the NDCC. Any other result would, again, cast doubt on the legality of the JSA arrangement.

1    On the other hand, the Tribe's claim that it did not waive its right to assert sovereign immunity on all its records, and its complaints about the breadth and scope of some of Bell's other requests, are well-taken. His "all records and communications" requests are over-broad and they seek both privileged communications and confidential medical and other information about other detainees. Bell has endeavored to revise his requests to exclude privileged or otherwise confidential information, and the Tribe claims he cannot do so in a Reply. While this is perhaps generally accurate, the Court is not going to knowingly invite another round of motions.

The Tribe shall produce all the non-privileged records it has regarding Bell, including any video. It shall produce the "Wellpath" documents described in Bell's proposed revised subpoena, at paragraph 3 [Dkt. # 127-1]. It shall produce records relating to now-named defendants Connolly and Stevenson. It shall provide documents identifying the holder of the medical positions requested in Paragraph 5 of the proposed revised subpoena. It shall provide the instigation reports and files on other deaths at NDCC in the past ten years. It shall produce these documents within 30 days. Nisqually shall provide a privilege log for the documents in these categories that it does not produce. The Motion to Compel is, to this extent, **GRANTED**.

The Motion to Compel production of the remaining documents, even in the proposed revised subpoena, is denied, and those requests are **QUASHED**.

**F. Individual Lacey Defendants' Motion for Summary Judgment.**

The Individual Lacey Defendants seek summary judgment on Bell's claims against them. They argue that none of them personally participated in Bell's detention or his medical care at NDCC, and that even if they did theoretically violate his rights they are entitled to qualified immunity because it was not (and is not) clearly established that the JSA violated the Constitution. On this latter point, their motion tracks their response to Bell's own motions, discussed above. They argue that even if the JSA is not permitted under Washington law, they

were reasonably mistaken about that legal conclusion. They argue that they had no role in Bell's medical treatment or his stroke and played no role in whether he received his medications, and thus were not deliberately indifferent to his needs as a matter of law. Indeed, they argue that "the records" (the same ones the Tribe claims they are immune from producing) demonstrate that Bell *did* get his requested medications. They also seek dismissal of Bell's state law negligence claims against them, arguing they owed him no duty as a matter of law.

Bell argues that it was clearly established that the JSA was unconstitutional and that the Individual Lacey Defendants "audaciously" participated in a conspiracy to deprive people like him of their constitutional rights.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631). The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

It was not and is not clearly established that the JSA is unconstitutional. Even with this Court's misgivings about the arrangement, there is no case holding that sending non-Indians to tribal detention facilities is unconstitutional. If and to the extent Bell's claims against the Individual Lacey Defendants is based on this legal conclusion, they are entitled to qualified immunity as a matter of law. Their motion on this point is GRANTED.

Bell does not claim that the Individual Lacey Defendants personally participated in his medical care, or in what he claims was deliberate indifference to his medical needs. He does not describe the duty they owed him on his primary medical care claim. He focusses on the JSA, his claim that it is clearly unconstitutional, and his claim that these defendants participated in it. He claims their motion is frivolous, but he does not meet his summary judgment burden of providing evidence from which a reasonable trier of fact could find that any of the Individual Lacey Defendants personally participated in his medical care. Their Motion for Summary Judgment on this point is GRANTED. Bell's request for a certification of frivolity is therefore DENIED. Bell's claims against the Individual Lacey Defendants are DISMISSED with prejudice.

* * *

In the end, the only claim that is directly foreclosed by the JSA's existence is Bell's *Monell*-like claim that the Tribe violated his rights to medical care (and related claims) through its policies. He still has a *Monell* claim against Lacey, and he still has plain-vanilla § 1983 claims against the individuals he claims violated his constitutional right to such care. So far, this litigation has centered on the JSA's constitutionality and Bell's claim that he was kidnapped for profit. It should focus on the care he received.

Bell's summary judgment motions are denied. Bell's motion to amend is granted in part and denied in part. Lacey's motion for sanctions is denied. Bell's motion to compel is granted in part and denied in part. The Individual Lacey Defendants' motion for summary judgment on lack of personal participation and qualified immunity is granted, and Bell's claims against them are dismissed.

IT IS SO ORDERED.

Dated this 18th day of May, 2020.

_____
Ronald B. Leighton
United States District Judge